**B & A MARINE CO., INC., Plaintiff–Appellant,**

v.

**AMERICAN FOREIGN SHIPPING CO., INC. and Harry W. Marshall, Defendants–Appellees.**

**No. 1198, Docket 93–9023.**

United States Court of Appeals, Second Circuit.

Argued March 3, 1994.

Decided May 4, 1994.

Charles Haydon, New York City (Dublirer, Haydon, Straci & Victor, New York City), for plaintiff-appellant.

Robert E. Crotty, New York City (Russell G. Bogin, Kelley Drye & Warren, New York City), for defendants-appellees.

Before: KEARSE and LEVAL, Circuit Judges, and GLASSER, District Judge.[*]

LEVAL, Circuit Judge:

This is an action alleging libel brought against an agent of the United States Government, and an employee of the agent. The District Court for the Eastern District of New York, Sterling Johnson, Jr., J., granted summary judgment for the defendants because the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., bars such actions against employees of the United States acting within the scope of their office or employment. 28 U.S.C. § 2679(b)(1). We affirm.

*Background*

On August 1, 1984, the United States, acting through the Department of Transportation, Maritime Administration ("MARAD"), entered into a service agreement with the defendant American Foreign Shipping Co. ("AFS"). Pursuant to the agreement, the United States appointed AFS "*as its agent, and not as an independent contractor,*" to manage and conduct the maintenance and repair of vessels in the Ready Reserve Force.[1] (emphasis added).

In September of 1987, Plaintiff B & A successfully bid for a contract with MARAD to refit the S.S. Cape Ann and S.S. Cape Avinof, both a part of the Ready Reserve Force. Pursuant to B & A's agreement with MARAD, B & A's work on these ships was to be supervised by AFS. Sometime after it undertook the work, B & A began to encounter severe cost overruns and substantial delays; B & A attributed these problems to inclement weather, and to AFS's neglect and lack of cooperation. Faced with an inability to meet its contractual deadlines for delivery, B & A requested a meeting with MARAD and AFS to resolve its performance difficulties.

On February 1, 1988, B & A representatives met with defendant Captain Harry W. Marshall, the President of AFS, and with three MARAD officials. After the meeting, MARAD instructed Marshall to draft a letter to B & A seeking assurances that B & A would complete the contracts and warning B & A that it might be necessary for MARAD to notify B & A's bonding companies of the possibility of default. Marshall prepared a draft, which included the following language:

> In the event that you are unable to immediately provide assurances satisfactory to us as to your ability and resources to complete the Contracts on the subject vessels, we consider it prudent to alert your bonding companies of the possibility of default in the performance of the Contracts.

Marshall showed the draft to MARAD. MARAD redrafted the letter and returned it

---

* Hon. I. Leo Glasser, United States District Judge for the Eastern District of New York, sitting by designation.

1. This consists of ships that can be used in case of national emergency.

to Marshall with instructions to type MAR-AD's redraft on AFS stationery. MARAD's redraft included the following language:

B & A Marine Co., Inc. has placed itself in a default situation by falling behind the contract schedule. MARAD is hereby notifying the appropriate insurance companies by copy of this letter that B & A Marine Co., Inc. is in default of its contract obligations.

Marshall incorporated MARAD's changes into a revised letter, which he resubmitted to MARAD. MARAD approved the letter and instructed Marshall to send it to B & A and its sureties; Marshall followed these instructions. The letter was signed by Marshall; the signature block indicated that it was sent by AFS as general agent on behalf of MARAD.

In February of 1989, B & A commenced this action in Supreme Court, Kings County, New York against Marshall and AFS alleging that Marshall, acting individually and on behalf of AFS, "willfully, maliciously, wrongfully and intentionally made the false statement that [B & A] was in default" of its obligations under its contract with MARAD. The complaint alleged that the statement prompted B & A's bonding companies to refuse to issue bonds to B & A in connection with substantial business opportunities, resulting in $15,000,000 in damages.

AFS and Marshall removed the action to federal court on the basis of diversity of citizenship and moved for summary judgment. The district court ordered B & A and the United States to show cause why the United States should not be substituted as defendant in place of AFS and Marshall under § 2679(d) of the Federal Tort Claims Act ("FTCA").

B & A responded that the United States should not be substituted for several reasons, including that the defendants were not acting within the scope of their employment, that the Government was not liable as it had not waived immunity for libel claims, and that the private defendants were not immune because the immunizing provisions of § 2679 were made inapplicable to a libel action by § 2680(h). The Government responded that the United States should not be substituted

as a defendant because, under § 2680(h), it did not waive sovereign immunity for claims of libel; AFS & Marshall asked the court to rule that they had acted within the scope of their employment and to dismiss the action because § 2679(b)(1) precludes a civil action against an employee of the Government who has committed a tort while acting within the scope.

On August 27, 1993, the court granted defendants' motion for summary judgment. The court ruled that Marshall and AFS were employees of the United States within the meaning of the FTCA, 28 U.S.C. § 2671; that they acted within the scope of their employment in the sending of the allegedly libelous letter; and that they were therefore immune from tort liability under 28 U.S.C. § 2679. The court did not substitute the United States as defendant. Although no explanation was given, it is clear this was because the United States is immune from suit for libel under § 2680(h) of the FTCA.

*Discussion*

■■■ The FTCA is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private employer for certain torts of "employees" acting within the scope of their employment. *See United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Leone v. United States,* 910 F.2d 46, 48–49 (2d Cir.1990), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991). At the same time as it offers the liability of the United States to compensate victims of such torts, the Act also provides that:

[t]he remedy against the United States ... for ... personal injury ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages ... against the employee whose act or omission gave rise to the claim.... Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee ... is precluded.... 28 U.S.C. § 2679(b)(1).

To emphasize the exclusivity of the remedy against the United States under the FTCA, § 2679(d) requires that the United States be substituted as *the* party defendant upon certification by the Attorney General or the court that the defendant employee was acting within the scope of his employment.

■ The Act defines "[e]mployee of the government" as including "officers or employees of any federal agency," and "federal agency" is defined as including "corporations primarily acting as instrumentalities or agencies of the United States but does not include any contractor with the United States." 28 U.S.C. § 2671. Thus, the FTCA explicitly excludes liability of the Government for the wrongful act or omission of an independent contractor. *See, e.g., Logue v. United States,* 412 U.S. 521, 526–27, 93 S.Ct. 2215, 2218–19, 37 L.Ed.2d 121 (1973); *Berkman v. United States,* 957 F.2d 108, 111 (4th Cir.1992). The court accordingly must determine: (1) whether the tortfeasors were acting in the role of employee of the Government or independent contractor, within the meaning of the FTCA, and (2) if they were employees, whether they were acting within the scope of their employment.

■ For purposes of the FTCA, the common law of torts and agency defines the distinction between an independent contractor (for whose torts the Government is not responsible) and an employee, servant or agent (for whose torts the Government is responsible). The Restatement (Second) of Agency provides helpful guidance. It defines a servant as "an agent employed by a master to perform service in his affairs whose ... performance of the service is controlled or is subject to the right to control by the master." *Restatement (Second) of Agency* § 2(2) (1958). If the court determines that the wrongdoer is an agent or employee of the Government who committed a tort within the scope of the employment, then the plaintiff may not recover from the agent or employee, but ordinarily has a claim against the Government. If, on the other hand, the tortfeasor is not an agent or employee of the Government, or is an agent or employee but did not commit the wrongdoing in the scope of the employment, then the plaintiff has a cause of action against the agent or employee in his individual capacity, but not against the Government.

### I. *Agency Status Under the FTCA*

■ The district court concluded that Marshall and AFS were employees of the Government acting within the scope of their employment. B & A contends this was error and that there were genuine issues of material fact for trial concerning AFS's agency. We reject this contention. As Marshall was an employee of AFS, it is *AFS's* status with respect to the Government that is critical. The evidence presented to the district court on the motion for summary judgment showed as a matter of law that AFS was an agent of the Government, and not an independent contractor.

In the first place, the contract between MARAD and AFS expressly provided that AFS would serve "as [MARAD'S] agent, and not as an independent contractor." By entering into this agreement, the Government was agreeing to make itself liable for AFS's torts committed within the scope of its agency. B & A points to no reason why the agreement should not be accepted at face value on this point.

Secondly, other details of the agreement confirm that it created an agency relationship. Courts have found it indicative of an agency relationship if the Government enjoys the "power 'to control the detailed physical performance of the contractor,'" *Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976 (quoting *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)), *or if* the Government in fact supervises the "day-to-day operations." *Orleans,* 425 U.S. at 815, 96 S.Ct. at 1976. *See also Logue,* 412 U.S. at 528, 93 S.Ct. at 2220; *Leone,* 910 F.2d at 50. The agreement required AFS "to manage and conduct the business for the United States *in accordance with such directions, orders* or regulations ... *as the United States* may from time to time *prescribe....*" (emphasis added). The agreement further provided that a MARAD representative would monitor AFS's performance. These provisions unquestionably establish the Gov-

ernment's contractual authority to control AFS's performance in detail.

Third, the evidence of the working relationship between MARAD and AFS further confirmed that such power resided in the Government. The affidavits of Marshall and of George H. Thurbon, who was assigned by MARAD to supervise AFS's performance, clearly showed that MARAD instructed AFS in detail as to what actions it should take in advising B & A of its default.

Finally, B & A submitted no evidence suggesting the existence of a triable issue of fact on this point. Under the circumstances, the district court was completely justified in concluding that the "employee" status of AFS and Marshall had been established as a matter of law.

## II. Lack of Competitive Bidding

■ B & A also contends, relying on 46 U.S.C. § 2303(a), that AFS could not properly be found to be an employee under the FTCA because it was not hired through competitive bidding. B & A's reliance on § 2303(a) is misplaced. That section requires the use of competitive procedures in "the procurement ... of ... all services" by the Coast Guard. The section does not mention MARAD. Although the Coast Guard, like MARAD, is part of the United States Department of Transportation, the inclusion of the Coast Guard in § 2303 does not appear to have been intended to subject the Department of Transportation or MARAD to that section's requirements. Rather, MARAD appears to be governed by 41 U.S.C. § 253, which requires competitive procurement of all public contracts, except when "made inapplicable pursuant to section 474 of Title 40." 41 U.S.C. § 252. Section 474 exempts MARAD from competitive bidding when "necessary and appropriate." *See also* 48 C.F.R. Subpart 1201.103 (exempting MARAD from Department of Transportation regulations "as authorized by 40 U.S.C. § 474(16)"). B & A does not dispute that MARAD complied with the procedures necessary for dispensing with competitive bidding. The argument that the contract was a nullity is meritless.[2]

## III. The Scope of the Employment.

■ It was equally clear under the evidence presented to the district court that the writing and sending of the allegedly tortious letter were within the scope of the defendants' employment. This was unquestionably a part of AFS's management of the maintenance and repair of MARAD's vessels, which was precisely the task for which the agency was created. Furthermore, the uncontradicted evidence demonstrated that, in writing the letter, and in particular the allegedly libelous portion of the letter, AFS was carrying out the explicit instructions of its principal. Thus, it is not seriously open to dispute that the sending of the letter was within the scope of the employment.

## IV. The Effect of the Immunity of the Government on the Liability of the Employee–Tortfeasor.

■ B & A argues that the FTCA requires that either the Government or the employee be liable for torts committed by employees of the Government within the scope of their employment. B & A acknowledges that the Government cannot be liable, because Section 2680 excludes its liability for libel (as well as for most intentional torts, claims arising in a foreign country, and a variety of other claims). However, B & A contends that, in the absence of a remedy against the Government, the provisions of Section 2679(b)(1) making the remedy against the United States exclusive of any civil action against the employee should be inoperative. Thus, it argues that where a plaintiff has no remedy against the Government because the particular tort is not covered by the Federal Tort Claims Act, the plaintiff should not also lose its claim against the employee and be left remediless.

The argument has considerable force and is strengthened by a literal reading of the statute. Section 2680 withholds liability of the Government by asserting, "The provisions of this chapter [Chapter 171] and section 1346(b) of this title *shall not apply to*

---

**2.** Because the argument in any event has no merit, we do not reach the question whether B &

A, which was not a competing bidder, has standing to complain of the contract award procedure.

... [a]ny claim arising out of ... libel ..." (as well as a variety of other torts and circumstances). 28 U.S.C. § 2680 (emphasis added). Section 2679(b)(1), which makes the remedy against the United States exclusive and precludes any action against the employee, is a part of the same chapter; it is among the "provisions of this chapter" which Section 2680(h) makes inapplicable to a libel claim. A literal reading therefore seems to command the conclusion that where Section 2680 forecloses liability of the United States, the exclusivity provision § 2679 is inapplicable, the liability of the employee survives, and the tort victim is not left remediless.

The principal problem with B & A's argument is that the Supreme Court has ruled to the contrary. In *United States v. Smith,* 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991), an alleged victim of medical malpractice committed by an Armed Forces doctor in Italy sought to impose liability on the individual tortfeasor, where the exception provision of Section 2680(k) made the FTCA inapplicable to a "claim arising in a foreign country." The Supreme Court ruled, based on the exclusivity provision of Section 2679(b)(1), that the Government employee was protected from liability, even where the Government had no liability. The Court did not address the opening clause of Section 2680, which appears to make the exclusivity provision of Section 2679(b)(1) inapplicable to a "claim arising in a foreign country." The Supreme Court's ruling forecloses B & A's argument. The Court expressly recognized that the effect of its ruling was to leave certain tort victims without any remedy—either against the Government or against the employee-tortfeasor. The Court found that this was the intention of Congress. We therefore conclude that B & A is precluded from asserting a libel action against AFS and Marshall based on a tort they may have committed as agents or employees of the Government within the scope of their employment, notwithstanding that the United States is also immune. *See also Brown v. Armstrong,* 949 F.2d 1007, 1012–13 (8th Cir.1991); *Mitchell v. Carlson,* 896 F.2d 128, 134–36 (5th Cir.1990).

## V. *Lack of Certification*

 B & A also argues that the district court's judgment should be reversed on the ground that the defendants failed to obtain certification of the Attorney General pursuant to Sections 2679(d)(1) & (2). Section 2679 provides that upon certification by the "Attorney General that the defendant employee was acting within the scope of his office or employment," the United States "shall be substituted as the party defendant," 28 U.S.C. § 2679(d)(1), the action shall be removed to federal court (if necessary) and the "action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title...." *Id.* § (d)(2).

The Assistant U.S. Attorney's letter submitted in response to the order to show cause did not contain an *assertion* that AFS and Marshall were acting within the scope of their employment, (although the letter implied as much).[3] Nonetheless, in the absence of a certification by the Attorney General, the statute permits the court to certify. *Id.* § 2679(d)(3).[4] The court's ruling that AFS and Marshall were employees of the Govern-

3. In all likelihood, the Assistant deliberately avoided making this "certification" because the statute provides that upon such "certification by the Attorney General ... the United States shall be substituted as the party defendant," 28 U.S.C. § 2679(d)(1), and the Assistant was seeking to avoid having the United States substituted as the defendant.

4. The statute provides that the employee may "petition the court [upon notice to the Government] to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(3). In their brief in response to the order to show cause, AFS and Marshall asked the court to so find. Thus, even if the statute should be read to prohibit the court from making the certification under Section 2679(d)(3) on its own motion, the brief filed by AFS and Marshall would serve as the "petition." It is true that the petition was not served on the Government in the manner required by the statute (with notice to the Attorney General). *See* 28 U.S.C. § 2679(d)(3). The Government might therefore have disregarded the petition or moved to set it aside. It chose, however, to waive the defect in service and defend on the merits against being substituted—on the ground that the United States has no liability under the FTCA for libel claims.

ment acting within the scope of their employment sufficiently complied with the certification requirement.

\* \* \* \* \* \*

We have considered B & A's other contentions and find them to be without merit.

#### Conclusion

The judgment of the district court is affirmed.

GLASSER, District Judge, concurring:

I concur in the result although differing with the majority as to the route by which that result was reached in two respects. First, B & A argues that if the government continues to be immune from an action for intentional tort (libel being such a tort) there is no remedy against the United States. If it is only the existence of such remedy which precludes an action against the employee pursuant to 28 U.S.C. § 2679(b)(1), then the statutory preclusion should be inoperative and the action against the defendant employees should lie. Were this not so, B & A contends, federal employees acting within the scope of their employment could commit intentional torts with impunity leaving their victims without recourse. Although this contention has logical consistency and appeal as far as it goes, it does not go far enough in that it fails to take account of 28 U.S.C. §§ 2679(d)(1), (4) and 1346(b).

Effective November 18, 1988, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act ("The Act" or "The Westfall Act" or "The Liability Reform Act"), P.L. 100–694. The declared purpose of that Act was to protect federal employees from the potential liability to which they were exposed as a result of the decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which dramatically changed the law by which the personal liability of federal employees was governed. Prior to *Westfall* federal employees were absolutely immune from personal liability for common law torts so long as they were acting within the scope of their employment at the time the injury occurred. *Westfall* decided that federal employees must have been act-

ing within the scope of their employment and, in addition, must have been acting in the exercise of governmental discretion. 484 U.S. at 297–98, 108 S.Ct. at 584–85. Included in the opinion in *Westfall* was the observation that Congress was in the best position to determine the extent to which federal employees should be personally liable for common law torts and that legislative consideration of the matter would be useful. *Id.* at 300, 108 S.Ct. at 585–86. Congress responded to that suggestion and enacted the Westfall Act.

Section 5 of that Act amended 28 U.S.C. § 2679(b) to read in relevant part as follows:

> (b)(1) The remedy against the United States provided by sections 1346(b) and 2672 of this title for ... personal injury ... resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his ... employment is exclusive of any other civil action or proceeding for money damages ... against the employee whose act or omission gave rise to the claim.... Any other civil action or proceeding for money damages arising out of ... the same subject matter against the employee ... is precluded....

Section 6 of that Act amended 28 U.S.C. § 2679(d) to provide in subdivision (4) thereof that:

> ... any action against the United States filed pursuant to section 1346(b) of this title ... *shall be subject to the limitations and exceptions applicable to those actions.* (Emphasis added).

Pursuing the reference to 28 U.S.C. § 1346(b) reveals that that section provides in relevant part:

> (b) Subject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his ... employment....

To complete the statutory analysis, it only remains to be noted that chapter 171 of title

28 of the United States Code contains within it § 2680(h) which provides that § 1346(b) shall not apply to any claims arising out of libel, slander and other intentional torts.

With this statutory framework clearly in mind, I turn to a consideration of *United States v. Smith*, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). The issue before the Court in that case was stated to be "whether the Liability Reform Act immunizes Government employees from suit even when an FTCA exception precludes recovery against the Government." 499 U.S. at 165, 111 S.Ct. at 1184–85. In deciding that the Act confers such immunity, the Court based its conclusion upon sections 5 and 6 of the Liability Reform Act, i.e. 28 U.S.C. §§ 2679(b)(1) and 2679(d)(4), respectively. As mentioned above, section 2679(b)(1) provides that an action against the Government under the FTCA is the exclusive remedy and precludes an action against the employee acting within the scope of his employment. Section 2679(d)(4) provides that actions against the Government pursuant to § 1346(b) (the FTCA) are "subject to the *limitations and exceptions* applicable to those actions." The Court then went on to say:

> One of these "exceptions"—expressly designated as such under § 2680—is the provision barring Government liability for [libel and other intentional torts. § 2680(h)].

499 U.S. at 166, 111 S.Ct. at 1185.

It is the "limitations and exceptions" language in § 2679(d)(4) of the Westfall Act which persuaded the Court that Congress intended to immunize federal employees acting within the scope of their employment— even if there is no remedy against the United States.[1]

It is significant to note that 28 U.S.C. § 2680 reads: "The provisions of this chapter *and section 1346(b) of this title* shall not

apply to" a wide variety of claims, including libel. (Emphasis added). As has been indicated, § 1346(b) authorizes actions against the United States "*[s]ubject to the provisions of chapter 171*"—that is to say—subject to the exceptions listed in § 2680. A specific reference to the opening clause in § 2680 was superfluous given the *Smith* Court's reliance on § 2679(d)(4) which referenced § 1346(b) which embraced § 2680 and all the other sections of chapter 171. The statutory route leading to this conclusion, although somewhat circuitous, is nevertheless clearly marked.

Second, I do not agree with that portion of Section V of the court's opinion which holds that "in the absence of a certification by the Attorney General, the statute permits the court to certify ... § 2679(d)(3)." Insofar as that statement suggests that the statute authorizes the court to certify *sua sponte*, I find nothing in § 2679(d)(3) which supports it. That statute provides, in relevant part, as follows:

> (3) In the event that the Attorney General has refused to certify scope of ... employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his ... employment.... A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) of the Federal Rules of Civil Procedure....

Although the statute does not authorize a *sua sponte* certification by the court, I would nevertheless find the requirement for a certification by the Attorney General provided pursuant to §§ 2679(d)(1) and (2) was satisfied here. The record reflects that the district court ordered the United States Government to show cause why the United States should not be substituted as the party defendant in the action pursuant to 28 U.S.C.

---

1. The Court also noted that 28 U.S.C. § 2679(b)(2) provides that the FTCA is *not* the exclusive remedy in a *Bivens* action in which the plaintiff seeks damages for a "constitutional tort" committed by a federal employee or in an action pursuant to a federal statute that authorizes an action against a federal employee, and concluded that Congress knew how to preserve tort liability of federal employees when it desired to do so and

that inferring a third exception for intentional torts was not warranted. 499 U.S. at 166–67, 111 S.Ct. at 1185 (*citing Andrus v. Glover Construction Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.")).

§ 2679. In a letter response the Government asserted that the FTCA precluded recovery against the government employee where the Government itself would be immune from suit after citing 28 U.S.C. §§ 2679(b)(1), 2679(d)(4) and *United States v. Smith, supra.* The letter went on to state that:

> As a result, sovereign immunity is extended to protect the government employee from personal liability arising while acting within the scope of his employment. Accordingly, in the instant case, the plaintiff cannot seek to sidestep the language and purpose of the Act by seeking recovery against these private defendants.

The Government then requested that it not be substituted as the party defendant because "substitution would not advance the litigation in any meaningful way and would only delay the required dismissal of this action."

A "certification" is defined as a "formal assertion in writing of some fact." *Black's Law Dictionary* 206 (5th ed. 1979). To regard the letter of the United States Attorney as anything other than an assertion and thus a certification that the defendants were employees acting within the scope of their employment would be to exalt form over substance.[2]

---

**2.** The Government's request that it not be substituted as the party defendant in the interests of judicial expediency should have been denied. 28 U.S.C. § 2679(d)(1). That procedural misstep, even if it had been avoided, would not have affected the result in any event.

**3.** Effective December 1, 1993, the provisions of Rule 4(d)(4) are now to be found in Rule 4(i)(1)(A) and (B).

**4.** The only references to the matter in the brief of AFS and Marshall are to the Government's response to the Order to Show Cause, viz., at JA 150a:

> Because Captain Marshall and AFS are Government employees acting within the scope of their employment, plaintiff cannot sue for libel. (*See* United States' Brief at 3.)

At JA 154a the defendants' brief reads:

> Plaintiff also claims that the United States has not certified that defendants were acting within the scope of their employment and, therefore, the Government cannot be substituted as

I am constrained to disagree as well with the majority's view that the defendant's brief in response to the order to show cause which referred to AFS and Marshall as Government employees acting within the scope of their employment was sufficient compliance with the certification requirement imposed by 28 U.S.C. § 2679(d)(3). *See* f.n. 3, *supra.* Although permitting an employee to petition the court at any time before trial to find and certify that he was acting within the scope of his employment, the statute also requires that "[a] copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) of the Federal Rules of Civil Procedure." That Rule, as it was then in effect,[3] provided that service upon the United States is made by delivering a copy to the local United States Attorney *and* by sending a copy by registered or certified mail to the Attorney General of the United States at Washington, D.C. Thus, service upon both the local United States Attorney *and* the Attorney General is required. *See McGregor v. United States,* 933 F.2d 156 (2d Cir.1991). In its footnote 4, the majority would hold that the brief of AFS and Marshall served as a "petition" which the Government could have disregarded or moved to set aside but chose, instead, "to waive the defect in service and defend on the merits against being substituted." Assuming that the brief may be regarded as a petition (which I would question),[4] the record does

---

a party defendant. The United States in its brief recognized that defendants are Government employees acting within the scope of their employment:

> The [FTCA] also requires that this action be dismissed as against the private defendants. The [FTCA] is the exclusive means of recovery for a tort claim arising from an act of a Government employee acting within the scope of his employment.

(United States' Brief at 3.) The United States, therefore, takes the position that AFS and Captain Marshall acted within the scope of their employment and that the action must be dismissed.

It would appear that the defendants' argument relies upon the Government's assertion as a certification that they were employees acting within the scope of their employment. The only other allusion in their brief which can be dubiously characterized as a petition appears at JA 154a–155a:

> Moreover, even where the United States refuses to certify that persons are employees of the

not reflect that it was ever served upon the Government and hence could have been disregarded or made the object of a motion to set it aside. The record is plainly barren of any suggestion that service was made upon the Attorney General in Washington, D.C. There is no indication in the record that the Government was ever even aware of the service requirement let alone that it was defective. The majority can, therefore, only speculate that the Government waived the defect or chose to "defend on the merits" in a matter to which it was never made a party but merely showed cause why it would not be. In any event, it is well settled that the United States Attorney has no power to waive any conditions or limitations imposed by statute for suits against the United States. *Munro v. United States,* 303 U.S. 36, 41, 58 S.Ct. 421, 423–24, 82 L.Ed. 633 (1938); *Battaglia v. United States,* 303 F.2d 683 (2d Cir.), *cert. dismissed,* 371 U.S. 907, 83 S.Ct. 210, 9 L.Ed.2d 168 (1962); *City of New York v. McAllister Brothers,* 177 F.Supp. 679 (S.D.N.Y.1959), *aff'd,* 278 F.2d 708 (2d Cir. 1960); *Fugle v. United States,* 157 F.Supp. 81 (D.C.Mont.1957).

Government acting within the scope of their employment, the FTCA "permits the employee to seek a judicial determination that he was acting within the scope of his employment." 28 U.S.C. § 2679(d)(3); *Smith,* 499 U.S. at 164 n. 5, 111 S.Ct. at 1184 n. 5. Once this Court makes such a ruling, plaintiff's claim of libel against AFS and Captain Marshall must be dismissed as a matter of law. 28 U.S.C. § 2679(b)(1).