383 F.3d 34
 Elvera SADALLAH and Valley View Country Club, Inc., as the assignee of Elvera Sadallah, Plaintiffs-Appellees,
v.
CITY OF UTICA and Edward Hanna, individually and in his official capacity as Mayor of the City of Utica, New York, Defendants-Appellants.
 No. 03-9055.
 United States Court of Appeals, Second Circuit.
 Argued: April 12, 2004.
 Decided: September 3, 2004.
 
 Appeal from the United States District Court for the Northern District of New York, David N. Hurd, J. COPYRIGHT MATERIAL OMITTED Dennis B. Schlenker, Esq., Albany, NY, for Plaintiffs-Appellees.
 Joseph P. Giruzzi, Esq., Assistant Corporation Counsel for the City of Utica (John W. Dillon, Corporation Counsel for the City of Utica, on the brief), Utica, NY, for Defendants-Appellants.
 Before: NEWMAN, KEARSE and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Defendants-appellants Edward Hanna ("Hanna")[1] and City of Utica (the "City") (collectively, "defendants") appeal from an order of the United States District Court for the Northern District of New York (Hurd, J.) denying Hanna qualified immunity. Because we find that plaintiffs have failed to allege facts sufficient to make out a constitutional claim under the "stigma plus" doctrine, see Morris v. Lindau, 196 F.3d 102, 114 (2d Cir.1999), we reverse the district court's denial of qualified immunity to Hanna. Moreover, because our holding concerning Hanna's entitlement to qualified immunity is "inextricably intertwined" with plaintiffs' claims against the City, see Swint v. Chambers County Comm'n, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), we exercise jurisdiction over those claims and remand with instructions to enter judgment for defendants.
 
 BACKGROUND
 
 2
 According to the complaint filed by Elvera Sadallah ("Sadallah") and Valley View Country Club ("VVCC") (collectively, "plaintiffs"), in May 1982, Sadallah leased property known as the Bertolini Clubhouse from the City for a period of ten years. The Bertolini Clubhouse served as a restaurant and banquet facility. Sadallah extended her lease for two incremental periods of five years, such that the lease would not expire until May 2002. In April 1998, Sadallah assigned the lease to VVCC.
 
 
 3
 About two years before the expiration of the lease, Hanna — then the mayor of the City — and other City administrators made various statements to the press about the poor physical condition of the Bertolini Clubhouse and the improper storage of chemicals in the food preparation area. According to plaintiffs, defendants falsely alleged building and health code violations, made baseless complaints to the Oneida County Health Department, and used the public authority and status of the City to disseminate defamatory information to the press regarding plaintiffs' business. Hanna also publicly suggested that the terms of Sadallah's lease represented a "sweetheart deal," which in plaintiffs' view "implied wrongdoing on the part of Plaintiffs." Plaintiffs claim that, by causing damage to their reputations and "irreparable financial harm" to their business, these statements constituted a "stigma plus" violation of their constitutional right not to be deprived of liberty or property without due process. Defendants moved to dismiss the complaint on the bases, inter alia, that plaintiffs had failed to allege a tangible injury so as to make out a "stigma plus" violation and that Hanna was entitled to qualified immunity on plaintiffs' claims. The district court denied their motion, and defendants filed this timely appeal.
 
 DISCUSSION
 A. Jurisdiction
 
 4
 Before reaching the merits, we address two jurisdictional issues. The first relates to the timing of the appeal. Defendants appeal from the district court's denial of their motion to dismiss even though the district court has not issued a final judgment in the case. Ordinarily we do not have jurisdiction where the district court has not yet issued a final judgment. See 28 U.S.C. § 1291 (2000); African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 359 (2d Cir.2002). A denial of qualified immunity, however, is immediately appealable, notwithstanding the lack of a final judgment, so long as the appeal turns solely on an issue of law. See Luna v. Pico, 356 F.3d 481, 486 (2d Cir.2004); Neu v. Corcoran, 869 F.2d 662, 664-65 (2d Cir.1989). Here, defendants appeal only the denial of qualified immunity, and resolution of this issue turns solely on whether plaintiffs' complaint alleges a legally sufficient constitutional claim. Thus, the lack of a final judgment does not preclude us from exercising jurisdiction.
 
 
 5
 The second jurisdictional issue stems from the notice of appeal, which was filed in the name of the City rather than in the name of its mayor, Hanna. Qualified immunity is not available to municipalities in cases under 42 U.S.C. § 1983. Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 765 (2d Cir.2003) (citing Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)). It is a defense aimed at "protect[ing] government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir.1998) (emphasis added). Because Hanna's claim of qualified immunity is the only issue that is immediately appealable, the appeal should have been filed in his name, rather than in the name of the City.
 
 
 6
 Despite this error, we are not required to dismiss the appeal if Hanna's intention to appeal is otherwise apparent from the language of the notice. See Fed. R.App. P. 3(c)(4) ("An appeal must not be dismissed ... for failure to name a party whose intent to appeal is otherwise clear from the notice."); Pugh v. Goord, 345 F.3d 121, 124 n. 2 (2d Cir.2003). Here, Hanna's intention to appeal is "objectively clear" on the face of the notice of appeal. Id. The body of the notice states that "the City ... appeals ... the Judgment of United States District Judge David N. Hurd ... inasmuch as it denied Qualified Immunity to Edward Hanna, individually." Moreover, Hanna's name appears in the caption. The error in the notice is therefore immaterial, and we may properly exercise jurisdiction over the appeal.
 
 B. Hanna's Qualified Immunity
 
 7
 Turning to the merits of the appeal, we must determine whether the district court erred in denying Hanna qualified immunity. We review this question de novo. Tellier v. Fields, 280 F.3d 69, 79 (2d Cir.2000).
 
 
 8
 A government official sued in his or her individual capacity is entitled to qualified immunity in any one of three possible circumstances:
 
 
 9
 (1) if the conduct attributed to him is not prohibited by federal law; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's action was objective[ly] legal [ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.
 
 
 10
 X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir.1999) (alterations in original) (internal citations and quotation marks omitted). Courts normally should address these questions in sequence; if the first inquiry is answered affirmatively, the second and third question are moot.[2] Id. at 66.
 
 
 11
 We thus begin by examining whether defendants' conduct is prohibited by federal law. Plaintiffs' complaint alleges that defendants made defamatory statements about the physical condition of their business. Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action. Lauro v. Charles, 219 F.3d 202, 207 (2d Cir.2000) (citing Paul v. Davis, 424 U.S. 693, 699-701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Aware of this obstacle to their suit, plaintiffs seek relief under the "stigma plus" doctrine, see id., which in limited circumstances provides a remedy for government defamation under federal constitutional law. See Paul, 424 U.S. at 701-10, 96 S.Ct. 1155.
 
 
 12
 To prevail on a "stigma plus" claim, a plaintiff must show (1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir.2001) (citing Paul, 424 U.S. at 701-02, 710-11, 96 S.Ct. 1155), rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). The state-imposed burden or alteration of status must be "in addition to the stigmatizing statement." Id. (emphasis added). Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process. Siegert v. Gilley, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); see also Morris, 196 F.3d at 114 (defining "stigma plus" as the "loss of reputation coupled with some other tangible element" (internal quotation marks omitted)). Burdens that can satisfy the "plus" prong under this doctrine include the deprivation of a plaintiff's property, Greenwood v. New York, Office of Mental Health, 163 F.3d 119, 124 (2d Cir.1998), and the termination of a plaintiff's government employment, Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir.2004). Other circuits have found that direct interference with a plaintiff's business may also constitute a "plus" under this doctrine. See, e.g., WMX Techs., Inc. v. Miller, 197 F.3d 367, 375 (9th Cir.1999). However, "deleterious effects [flowing] directly from a sullied reputation," standing alone, do not constitute a "plus" under the "stigma plus" doctrine. Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir.1994).
 
 
 13
 With these guidelines in mind, we find that plaintiffs' complaint fails to allege a claim under federal law. Even assuming, arguendo, that defendants' public statements about plaintiffs amounted to defamation, plaintiffs have failed to allege the additional state-imposed burden necessary for invoking the "stigma plus" doctrine. In their brief, plaintiffs allege that defendants' acts have caused them "damage not only to their business reputation, but [also the deprivation] of the good will in their business," and that this "has served to discourage customers from availing themselves of the Plaintiffs' facility." These harms, however, are not "in addition to" the alleged defamation, Doe, 271 F.3d at 47, but rather are direct "deleterious effects" of that defamation, Valmonte, 18 F.3d at 1001. Absent an additional "deprivation of a legal right or status," Abramson v. Pataki, 278 F.3d 93, 101, 103 (2d Cir.2002), such as the revocation of their lease, plaintiffs have not alleged a "plus" sufficient to sustain a "stigma plus" claim.[3]
 
 
 14
 The deficiencies in plaintiffs'"stigma plus" argument are all the more apparent when one examines plaintiffs' effort to satisfy the first prong of the "stigma plus" test, i.e. that they have been stigmatized by defendants' conduct. Plaintiffs claim that they can "establish that the defamatory statements... resulted in substantial damage ... to the personal reputation of Elvera Sadallah, and the corporate entity, [and] caused irreparable economic harm [to plaintiffs]." Thus, plaintiffs argue, "they are able to meet the first [prong] of establishing stigma [plus.]" Plaintiffs also argue that this same economic harm is sufficient to establish the second prong of the "stigma plus" analysis. Repeating the economic-harm argument, however, does not satisfy the separate and independent "plus" prong of the "stigma plus" test.
 
 
 15
 Because plaintiffs have failed to establish a due process claim or any other violation of federal law, their claims are without merit. Accordingly, Hanna is entitled to qualified immunity.
 
 C. Plaintiffs' Claims Against the City
 
 16
 Normally, we would not have jurisdiction to consider plaintiffs' claims against the City because only the issue of Hanna's entitlement to qualified immunity was immediately appealable. When, however, an appellate court "has taken jurisdiction over one issue in a case, it may, in its discretion, exercise jurisdiction over an independent but related question that is inextricably intertwined with the [appealable issue] or is necessary to ensure meaningful review of that issue." Ierardi v. Sisco, 119 F.3d 183, 189 (2d Cir.1997) (alteration in original) (internal quotation marks omitted); see also Swint, 514 U.S. at 51, 115 S.Ct. 1203. Here, plaintiffs'"stigma plus" claim against the City is "inextricably intertwined with" the issue of Hanna's qualified immunity, because plaintiffs' entire case against the City is based on precisely the same argument that we rejected in finding for Hanna on the qualified immunity issue. Accordingly, we may dispose of plaintiffs' claims against the City. Because they have not established a "plus" sufficient to maintain a "stigma plus" claim, plaintiffs' due process claim against the City must be dismissed.
 
 D. Jurisdiction over State Law Claims
 
 17
 Although plaintiffs' complaint does not explicitly assert claims under New York state law, a state defamation claim may be within the scope of the pleading. Nevertheless, because plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); Zheng v. Liberty Apparel Co., 355 F.3d 61, 79 n. 18 (2d Cir.2003) (citing Gibbs, 383 U.S. at 726, 86 S.Ct. 1130). The district court should therefore decline supplemental jurisdiction over any state law claims.
 
 CONCLUSION
 
 18
 For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with instructions that the district court enter judgment in favor of defendants on all federal claims and dismiss any state law claims without prejudice.
 
 
 
 Notes:
 
 
 [1]
 For reasons discussedinfra, we treat Hanna as an appellant notwithstanding the fact that the notice of appeal was not filed in his name.
 
 
 [2]
 In some cases, it may be "appropriate to abstain from the thorny constitutional issue" and instead to proceed directly to the second and third questions in the qualified immunity testHorne v. Coughlin, 178 F.3d 603, 604-06 (2d Cir.1999). In this case, there is no novel or excessively complicated constitutional question to be considered, and it is therefore appropriate to follow the typical sequence for deciding qualified immunity claims.
 
 
 [3]
 Although plaintiffs direct our attention toMarrero v. City of Hialeah, 625 F.2d 499, 513-14 (5th Cir.1980) (later adopted as law of the Eleventh Circuit), in which the Court of Appeals reinstated the stigma-plus claim of plaintiffs who suffered damage to their business reputation when they were publicly defamed in connection with the government's unlawful seizure of their store's inventory, subsequent cases have made clear that the holding of Marrero should not be read as broadly as plaintiffs would have us read it. See Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1437-38 (11th Cir.1998) (noting that in Marrero,"the state not only defamed the plaintiff's business, but also deprived the plaintiff of more tangible property interests"); Von Stein v. Brescher, 904 F.2d 572, 583 (11th Cir.1990) (noting that in Marrero, plaintiffs asserted "a claim of defamation coupled with deprivation of employment"); see also WMX Techs., 80 F.3d at 1319-20 (declining to apply Marrero in the absence of direct government interference with the conduct of plaintiff's business).